UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Criminal No. 20-10197-8-LTS |
| | ) | |
| RICKY PINA. | ) | |
| | ) | |

ORDER ON MOTION TO SUPPRESS (DOC. NO. 397)

April 27, 2022

SOROKIN, J.

Ricky Pina seeks to suppress "any and all evidence and information derived from the seizure and search of his automobile by the Boston Police on July 20, 2019." Doc. No. 397 at 1.[1] The government has opposed Pina's motion. Doc. No. 441. For the reasons explained below, the Court finds no hearing is warranted, and the motion to suppress is DENIED.[2]

In July 2019, Boston police were aware of an uptick in violence involving two rival street gangs in the area of Dudley, Wendover, and Humphries Streets. The violence included recent shootings, had resulted in multiple safety bulletins issued to officers assigned to the area, and led to "directed patrols" of the area by police. On the afternoon of July 20, 2019, officers assigned to such a patrol saw a Honda Accord with a missing front license plate and heavily tinted windows. The officers began to follow the Honda, ran a check of the rear license plate number, and learned that it was registered to Pina. They believed Pina was a member of NOB, one of the

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.
[2] The Court recounts the facts, which appear to be undisputed, as the parties describe them and with reference to the underlying police report and affidavit the parties have submitted. See Doc. No. 397 at 1-2; Doc. No. 441 at 2-4; see also Doc. Nos. 397-2, 441-1.

two gangs involved in the recent violence in the area, and they believed he had a previous conviction for a gun-related offense.

Meanwhile, as they followed the Honda, the officers observed it turn and appear to accelerate in a manner that seemed evasive. At that time, the officers had not yet attempted to initiate a traffic stop and had not activated lights or sirens. They tracked the Honda and caught up with it after it had parked. The officers approached and knocked on the windows, directing the occupants to lower them. When the windows remained up, an officer opened the rear passenger side door and directed the front passenger to lower his window. The passenger, whom officers recognized as Michael Brandao, responded that the car was not running. The officers believed Brandao was also a member of NOB and recalled that his name had been included in the safety bulletins describing the recent shootings.[3] Brandao and Pina (the driver) complied when officers directed them to exit the Honda. Frisks of both men yielded nothing, and they were led to wait behind the car while officers conducted a protective sweep of the inside of the Honda.

During the sweep, an officer saw a plastic bag containing blue pills behind the front driver's side air conditioning vent. Believing the pills were a controlled substance, the officer placed Pina in handcuffs.[4] The officer then returned to the Honda, removed the vent to retrieve the pills, and discovered a black handgun under the plastic bag. Pina was arrested and also received traffic citations for the missing front license plate, excessive window tint, and reckless driving. Brandao was released, and the car was left with Pina's brother. When Pina was booked at the police station, officers confiscated two cell phones from him.

---

[3] Brandao, also charged in this case, entered a guilty plea on April 26, 2022. Doc. No. 455.
[4] An officer informed Pina of his discovery of the pills and asked if there was anything else in the Honda. Pina did not respond.

Pina now asks the Court to suppress all evidence the police recovered as a result of these events, including the pills, the gun, any evidence derived from the phones, and "any response, non-verbal response, or silence" in response to questioning by police. Doc. No. 397 at 1, 8. He contests the lawfulness of the stop, the manner in which police effected it, and the scope of the protective sweep. The record does not support his challenge to any aspect of the encounter,[5] nor does it warrant an evidentiary hearing.[6]

First, the stop. The record before the Court establishes that the car Pina was driving: 1) lacked a front license plate; 2) had windows that were heavily tinted; and 3) appeared to turn, accelerate, and drive at a high rate of speed after the officers began driving behind it. The officers observed each of these things before initiating the stop, and they ultimately issued three traffic citations to Pina based on their observations. The affidavit Pina filed with his motion does not address, let alone generate a dispute about, any of those facts, Doc. No. 397-1, and his motion does not seriously challenge them.[7] Instead, his objection focuses on his belief that the stop "was motivated by an interest to conduct a search of the vehicle for investigation purposes" that arose upon the officers learning of Pina's identity. Doc. No. 397 at 4-5. This argument disregards "familiar" First Circuit law: "An officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else." United States v.

---

[5] Pina bears the burden to establish a violation of the Fourth Amendment. United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016). Only after Pina has shown he was subjected to a warrantless seizure or search does the burden shift to the government to establish the intrusion was nonetheless lawful. United States v. Field, 823 F.3d 20, 25 (1st Cir. 2016); United States v. Harrington, --- F. Supp. 3d ----, 2021 WL 3887250, at *1 (D.N.H. Aug. 31, 2021).

[6] There is no "presumptive right to an evidentiary hearing on a motion to suppress." United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011). To establish entitlement to such a hearing, a "defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to" suppression. United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).

[7] The search-warrant affidavit Pina filed as an exhibit in support of his motion also memorializes the traffic infractions officers observed before the stop. Doc. No. 397-2 at 3-4.

McGregor, 650 F.3d 813, 820 (1st Cir. 2011).  Thus, regardless of the officers' subjective motivations, any one of the three traffic offenses they witnessed before they knocked on the windows of the car—violations they later memorialized in citations to Pina—justified their stop of the Honda.[8]

Second, the frisk of Pina and the car.  To the extent Pina suggests the officers exceeded the bounds of a legitimate traffic stop by ordering him out of the Honda, frisking him, and requiring him to remain behind the car while the interior was swept, Doc. No. 397 at 4-6, neither the law nor the record support his criticisms.[9]  Indeed, well-settled and binding "first principles" validate the officers' conduct.  McGregor, 650 F.3d at 820.  After lawfully stopping a vehicle, an officer may "order the occupants out of the auto."  Id.  The officer also may "pat [the occupants] down and search the car's interior—including closed compartments—for weapons" within easy reach "if he has some articulable, reasonable suspicion that the persons stopped may be dangerous."  Id.  So here, no constitutional violation arose when the officers required Pina and Brandao to exit the Honda.  Further, the record before the Court establishes that the officers believed: 1) both men were associated with a street gang responsible for escalating violence in the area; 2) such violence had recently included multiple shootings; 3) Pina had been convicted

---

[8] The government alternatively argues that the facts known to the officers at the time they approached the car also "provided an objective basis of reasonable suspicion of criminal activity" sufficient to independently justify an investigative stop.  Doc. No. 441 at 6-8 (pointing to the recent gang-related violence in the area leading to the directed patrol the officers were conducting, the connection of the NOB gang to that violence, the fact that the car was registered to Pina, the officers' understanding that Pina was a member of NOB previously convicted of a firearm offense, and the apparent attempt by the driver of the Honda to evade the trailing police).  Because the multiple traffic violations plainly justified the stop, the Court need not resolve whether it was also lawful under this alternative theory.

[9] The record here does not support a finding that either the nature or the duration of the stop at issue elevated it to a de facto arrest.  See Doc. No. 441 at 14-18 (citing the relevant legal standard and outlining the manner in which the officers' actions here were undertaken reasonably and in response to the situation as it unfolded).

of unlawfully possessing a firearm; and 4) Brandao was specifically named in safety bulletins warning officers of the gang-related violence.  Those facts, undisputed by Pina, provided the officers with "a suspicion resting on rational reasons, rather than pure gut feelings," that justified frisking both the men and the Honda.[10]  Id. at 821; see also United States v. Woodrum, 202 F.3d 1, 6-7 (1st Cir. 2000) (allowing for deference "to the experienced perceptions of the officers" whose conduct is challenged, assuming the perceptions are reasonable and arise at least in part from facts "particular to the" defendant).

    Finally, the scope of the protective sweep.  Pina urges that, by removing the vent cover and retrieving the pills and the gun, the officer "exceeded the scope of a protective search."  Doc. No. 397 at 7.  He is wrong.  The First Circuit has deemed permissible much more intrusive searches of vehicles in similar contexts.  E.g., McGregor, 650 F.3d at 824-26 (approving protective sweep of car that included opening and removal of items from center console and use of knife to pop open latched interior panel where gun was found, in case where suspected gang members were occupants of car driving away from hospital where a fellow gang member had been taken following a shooting and driver of car had prior firearms conviction).  In the circumstances presented, and for reasons articulated by the government in its memorandum, Doc. No. 441 at 9-14, the sweep of the Honda was appropriate, the removal of the vent cover to secure pills that the officer lawfully observed and reasonably believed were narcotics was permissible, and the recovery of the gun discovered beneath the pills was lawful.

    Though his motion makes passing reference to statements and mentions the seizure of two cell phones, Pina advances no discrete challenges to such evidence.  He has identified no

---

[10] In addition, even if the officers had overstepped in patting Pina down (and they did not), nothing was recovered during the frisk in any event.

statements[11] nor any specific evidence recovered from the phones, and he has not challenged the warrant that issued permitting searches of the phones.  See Doc. No. 441-1.  Having found no constitutional violation in the course of the stop or the protective sweep, there are no fruits of any such violation to suppress, and no other basis for ordering the exclusion of the evidence recovered during and as a result of the July 2019 encounter.

      Accordingly, Pina's Motion to Suppress Evidence Obtained from a Motor Vehicle Stop (Doc. No. 397) is DENIED.

SO ORDERED.

  /s/ Leo T. Sorokin
United States District Judge

---

[11] In his affidavit, Pina avers that he was asked "several questions," though he does not say whether he responded.  Doc. No. 397-1 at 1; see Doc. No. 441-1 at 8 (documenting one question posed to Pina after the pills were observed but noting no response by Pina).